**Jeffrey H. SMITH,**

v.

**The GOODYEAR TIRE & RUBBER CO. and Lee W. Young.**

**Civ. A. No. 83–280.**

United States District Court,
D. Vermont.

Jan. 25, 1985.

---

Michael T. Schein, Burlington, Vt., for plaintiff.

John T. Sartore, and Stephen Soule, Burlington, Vt., for defendant The Goodyear Tire & Rubber Co.

Karen McAndrew, Dinse, Erdmann & Clapp, Burlington, Vt., for defendant Lee W. Young.

**COFFRIN**, Chief Judge.

## Introduction

This is a diversity action brought by an injured passenger, Jeffrey Smith, arising out of an automobile accident that occurred on November 6, 1982, in Berlin, Vermont. Mr. Smith alleges negligence on the part of Defendant driver, Lee Young, and also alleges strict liability[1] against Defendant tire manufacturer, The Goodyear Tire & Rubber Company (Goodyear).

In their answers to Plaintiff's interrogatories, Defendants have relied in part upon the so-called "seat belt defense," asserting that their liability is reduced or completely erased by the fact that Plaintiff was not wearing a seat belt although one was available to him, and that wearing it would have reduced, if not eliminated, his injuries.[2]

Plaintiff has moved to strike these responses to his interrogatories and to exclude all other evidence on the issue of seat belt use. Plaintiff asserts that the "seat belt defense" is not available in Vermont either under the doctrine of comparative negligence or the doctrine of mitigation of damages. Moreover, he asserts that not wearing a seat belt cannot constitute negli-

---

**1.** In Plaintiff's complaint against Defendant Goodyear, he alleges both strict liability and breach of warranty. In his memorandum supporting this motion, however, he treats the two as one and discusses the seat belt defense only as it relates to the strict liability. claim, not breach of warranty. Defendant Goodyear's memorandum also fails to discuss the breach of warranty issue separately from that of strict liability.

In light of the parties' failure to present a separate discussion regarding the breach of warranty issue, and in light of the fact that there is considerable overlap between the two theories—in that both obviate Plaintiff's need to prove "fault" on the part of Defendant—we treat the two issues as one with regard to the seat belt defense and hold that evidence regarding the nonuse of Plaintiff's seat belt may be presented on Plaintiff's breach of warranty claim as well as on his strict liability and negligence claims.

**2.** Defendant Goodyear also asserts that Plaintiff assumed the risk of injury that a seat belt would have prevented. The type of assumption of risk asserted is not "primary" assumption of risk, where a defendant asserts that it has no duty to the plaintiff, *Sunday v. Stratton Corp.,* 136 Vt.

293, 301, 390 A.2d 398, 402–03 (1978), but secondary. Elements of the latter are that one knows of the existence of the risk, appreciates the extent of the danger, and consents to assume it. *Id.* at 303, 390 A.2d at 404. The *Sunday* court stated, however, that "the doctrine [of secondary] *assumption of risk is logically only a phase of contributory negligence* and that use of assumption of risk language is irrelevant and confusing in a jury instruction on comparative negligence." *Id.* at 304, 390 A.2d at 404 (emphasis added) (citing several authorities including *Wilson v. Gordon,* 354 A.2d 398 (Me.1976), *Bolduc v. Crain,* 104 N.H. 163, 181 A.2d 641 (1962), and *McGrath v. American Cyanamid Co.,* 41 N.J. 272, 196 A.2d 238 (1963)).

The court appears—both from this quote and from other language throughout the opinion—to have used the terms "comparative" and "contributory" negligence interchangeably. This failure to distinguish the two terms, together with the fact that Vermont no longer uses the doctrine of contributory negligence, suggests that the court held assumption of risk "only a phase of," or contained within, the doctrine of comparative negligence. We do not, therefore, discuss assumption of risk as a defense separate from that of comparative negligence.

gence and that comparative negligence is not relevant to an action based on strict liability.

We·disagree with Plaintiff on each of his points. For the reasons stated below, plaintiff's motion is, therefore, DENIED.

### Discussion

#### I. Plaintiff's Claim of Negligence

#### A. Legal Precedent

■ Courts are divided on the issue of whether evidence regarding the nonuse of automobile seat belts should be admissible in comparative negligence cases.· See generally Annot., 95 A.L.R.3d 239 (1979) (survey of reported cases in the various states). Vermont's statutes and state court decisions are silent on this issue.

This court has confronted this issue, however, on at least two prior occasions. As in the instant case, both were diversity actions involving Vermont substantive law and in both, such evidence was allowed. See Beaudoin v. Hurilla, No. 81–199 (D.Vt. July 30, 1982) (charge delivered); Cameron v. Spencer, No. 73–79 (D.Vt. Dec. 17, 1973) (charge delivered). On each occasion, the court charged the jury that the question of whether the plaintiff's failure to use an available seat belt constituted negligence was a question for them to decide:

> There is no statute or law in the State of Vermont which requires a person in a motor vehicle to use seat belts and *the question of whether it was negligent for the plaintiff to fail to use the available seat belt or restraining device is a question for you to decide.* In answering this question you should measure the conduct of the plaintiff in the circumstances against that conduct which you find a reasonably prudent passenger ... would have exercised for his or her own safety under ... similar circumstances. If you find ... that the plaintiff was negligent in failing to use the restraining device ... you must then go on to determine whether or not the restraining de-

vice ... would have prevented the injuries she received.

*Beaudoin v. Hurilla, supra* (emphasis added); *see also Cameron v. Spencer, supra* (virtually identical charge). We continue to believe that the issue of whether failure to wear one's seat belt constitutes negligence is one for the jury.

#### B. No Duty to Wear One's Seat Belt

Plaintiff relies heavily in his brief on the fact that regulations adopted pursuant to Vermont statutes, although they do require that pleasure cars be equipped with seat belts in their front seats, 23 Vt.Regs.Ann., Chap. 13, at 72, (Fox 1980), do not require that the seat belts be used. Plaintiff also points out that Vermont courts have never imposed such a duty.

These facts, while true, are not dispositive. The lack of a statutorily or judicially imposed duty means only that the conduct at issue does not establish a prima facie case of negligence or constitute negligence *per se.* Certain acts in certain circumstances may, of course, be considered negligent, or evidence of negligence, even though they may not yet have been addressed by the legislature or prior case law. That is the way judicially imposed duties are initially created in every instance. It is also the way in which many evidentiary rulings have been created.[3] Thus, the lack of any statutorily or judicially created duty to wear one's seat belt does not preclude a court from admitting this as evidence on the question of negligence. Support for this proposition may be found not only in this court's jury instructions in *Beaudoin* and *Cameron, supra,* but also in cases from several other jurisdictions. *See, e.g., Benner v. Interstate Container Corp.,* 73 F.R.D. 502 (E.D.Pa.1977); *Curry v. Moser,* 89 A.D.2d 1, 454 N.Y.S.2d 311 (Sup.Ct., 2d. Dept.1982).

Plaintiff asserts that courts' reluctance to "find a duty to buckle up" stems from a concern that requiring seat belt use would

---

**3.** As noted below, however, simply admitting evidence of certain conduct on the question of negligence does not establish that conduct as

negligence *per se.* Thus, Defendants in this case must still prove that the nonuse of plaintiff's seat belt was negligent.

lead to a flood of litigation in which defendants would argue that, as a matter of law, any plaintiff who fails not only to use his seat belt but also to install an air bag in his car, to adjust his head rest, or, indeed, "to drive a Mack Truck" would be more vulnerable to injury and, thus, guilty of contributing to his own injury.

We are unpersuaded by such reasoning. First, admitting such evidence would not create a duty but would merely allow the jury to consider the information on the question of negligence. Second, the test of negligence would continue to be whether the person acted *reasonably under the circumstances presented.* The jury's discretion and common sense will remain as a check upon parties that might seek to make wild assertions of negligence. We do not presume to decide whether or not Plaintiff's failure to fasten his seat belt in the instant case was reasonable. We do believe, however, that the arguments on both sides of the issue are such that a reasonable jury could decide either way. As stated by a New York court,

> [T]he seat belt affords the automobile occupant an unusual and ordinarily unavailable means by which he or she may minimize his or her damages *prior* to the accident.... [T]he burden of buckling an available seat belt may, under the facts of the particular case, be found by the jury to be less than the likelihood of injury when multiplied by its accompanying severity.

*Spier v. Barker,* 35 N.Y.2d 444, 452, 323 N.E.2d 164, 168, 363 N.Y.S.2d 916, 922 (Ct.App.1974) (admitting seat belt evidence on the question of damages). We hold that

the jury should be given the task of making this assessment.

Unlike New York, which at the time of *Spier* was a contributory negligence state,[4] Vermont follows the doctrine of comparative negligence. Thus, even if the jury were to find Plaintiff's failure to buckle up to be negligent, Plaintiff would not be barred completely from recovery unless his negligence exceeded the total causal negligence of the Defendants. Instead, his recovery would be reduced in proportion to the amount of causal total negligence attributed to him. 12 V.S.A. § 1036. Therefore, we do not feel the temptation felt by courts in those states which follow the harsher rule of contributory negligence to exclude this evidence in order to ensure that plaintiffs obtain some relief. Believing that parties should pay for injuries in proportion to the degree to which they cause them, we hold that evidence concerning the nonuse of a seat belt may be considered by the jury. *See Cameron v. Spencer,* No. 73–79 (D.Vt. Dec. 17, 1973) (interrogatories answered by jury show that jury, finding plaintiff's failure to "buckle up" to be ten percent of the total negligence proximately causing the injuries, reduced $5,000.00 award by ten percent, or $500.00).

## C. *Custom as a Defense*

■ Plaintiff has submitted to the court a survey published by the Vermont Health Department in its *1983 Health Data Book* which states that over eighty percent of all Vermont adults fail to use seat belts when they travel by car. From this, Plaintiff

---

**4.** Since the *Spier* decision, in 1974, the New York legislature has opted to reject the doctrine of contributory negligence and to follow that of comparative negligence. CPLR article 14–A (CPLR 1411 *et seq.*). The new doctrine applies to all causes of action which accrued after September 1, 1975. *Curry v. Moser,* 89 A.D.2d 1, 8, 454 N.Y.S.2d 311, 316 (N.Y.Sup.Ct., 2d Dept. 1982).

The *Curry* decision directly supports our reasoning in this opinion. *Curry* specifically rejects the general rule announced in *Spier,* and holds that, when applying the doctrine of comparative negligence, the seat belt defense should be available not only on the question of damages, but

also on the question of liability. *Id.* at 2, 454 N.Y.S.2d at 312. In explaining why the *Spier* court may have ruled as it did, *Curry* noted that *Spier* had been decided under the doctrine of contributory negligence which would have "absolutely barred recovery by a contributorily negligent plaintiff ...," *id.* at 8, 454 N.Y.S.2d at 316.

In sum, *Curry* shows that, since New York has opted to follow the comparative negligence doctrine, it has rejected the distinction between liability and damages on the issue of the admissibility of evidence regarding seat belt use, and allows the evidence as to both issues.

reasons that it would be unjust to allow the standard of care followed by less than one fifth of the population to determine that driving without one's seat belt is "unreasonable." Even assuming, for the sake of argument, that Plaintiff's statistics are accurate, they are not controlling. Custom is not an absolute defense in the area of tort law. *The T.J. Hooper,* 60 F.2d 737, 740 (2d Cir.1932) (Hand, J.) ("Courts must in the end say what is required; there are precautions so imperative that even their universal disregard will not excuse their omission.") *See also W. Prosser, The Law of Torts* § 33, at 167 (4th ed. 1971) (labelling such behavior "customary negligence").

Although the fact that most people do not "buckle up" may help the Plaintiff in that jurors may empathize with him or share his belief that failure to do so is not unreasonable, it remains quite possible that a group of jurors would view a failure to wear a seat belt as unreasonable. Indeed, such a finding would be possible even if the jurors themselves were not in the habit of wearing seat belts. In sum, while the fact that over eighty percent of adults do not wear seat belts may help Plaintiff's case, it is not dispositive and cannot preclude the jury from considering this evidence.

### D. *Judicial Economy*

Plaintiff urges that concerns of judicial economy dictate that the court not admit evidence regarding the nonuse of one's seat belt. Plaintiff reasons that allowing evidence on the issues of whether failure to use one's seat belt constitutes negligence and whether such a failure caused or enhanced one's injuries would lead to a lengthy and expensive battle of experts. Even if we shared plaintiff's concern in this regard, it is an insufficient basis upon which to exclude such clearly relevant evidence.

Admittedly, questions regarding benefits of seat belt use are complex. This is not, however, as plaintiff asserts, an "essentially tangential issue." The nonuse of his seat belt goes not only to the issue of whether Plaintiff acted negligently, but also to the degree to which any negligence found might have contributed to the injuries he sustained. It lies at the very heart of the question of who must pay for the injuries and in what proportion. Oftentimes jurors are required to decide complex issues which require a good deal of expert testimony; the complexity of the matter, in itself, is insufficient to exclude evidence as crucial to a given case as is the information at issue here.

### E. *Proximate Cause*

Plaintiff states in his brief that one's negligence cannot diminish one's recovery if the negligence is shown to be a proximate cause of only the *injury,* as opposed to the *accident* which led to the injury. Because there is no allegation that his failure to wear a seat belt contributed to the accident, Plaintiff urges that the seat belt defense is inappropriate in this case.

This assertion is both novel and illogical. The Restatement (Second) of Torts, § 463 (1965) defines contributory negligence as

conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, and which is a legally contributing cause co-operating with the negligence of the defendant in bringing about the plaintiff's *harm.*

*Id.* (emphasis added). This definition would also apply to the doctrine of comparative negligence, which is essentially identical to the doctrine of contributory negligence, except for the method by which damages are assessed. *See* 12 V.S.A. § 1036 (Vermont's comparative negligence statute). *Cf. Frost v. Tisbert,* 135 Vt. 345, 347, 376 A.2d 748, 749 (1977) ("What was once contributory negligence has become a measuring of comparative negligence.").

Plaintiff's assertion can result only from a misreading of the cases he cites for support. While it is true that *Lee v. Wheeler,* 130 Vt. 624, 298 A.2d 851 (1972), and *Frost, supra,* did state that comparative negligence diminishes one's recovery only if it is "a proximate cause ... of the accident," *Lee,* 130 Vt. at 627, 298 A.2d at 852; *Frost,* 135 Vt. at 347, 376 A.2d at 749–50, these statements were at the most dicta and were, most likely, simply the result of loose

phraseology. Defendant in *Lee* alleged that the plaintiff's negligent conduct, driving a car while holding a bottle between his legs, had contributed to the accident; similarly, the plaintiff's conduct in *Frost*, manually pulling on a conveyor belt, was also alleged only to have contributed to the accident. Neither decision involved conduct, of the sort in the instant case, which contributed only to the injury.[5]

Plaintiff does cite two cases which are on point, *Caiazzo v. Volkswagenwerk A.G.*, 647 F.2d 241, 251 (2d Cir.1981), and *Spier v. Barker*, 35 N.Y.2d 444, 323 N.E.2d 164, 363 N.Y.S.2d 916 (1974), yet he misconstrues each of them. Both cases involved the application of New York law to the seat belt defense. While the courts did state, as Plaintiff quotes, that " 'the doctrine of contributory negligence is applicable only if plaintiff's [negligence] causes ... *the accident*,' " *Caiazzo*, 647 F.2d at 251 (quoting *Spier*, 323 N.E.2d at 168, 363 N.Y.S.2d 916) (emphasis supplied), these statements must be read in context of the entire opinions. Both cases allowed evidence concerning the nonuse of a seat belt to be considered by the jury on the question of *damages*. *Caiazzo*, 647 F.2d at 252; *Spier*, 323 N.E.2d at 168–69, 363 N.Y.S.2d 916. We think that admitting such evidence on the issue of damages is, in effect, the same as allowing it to be considered on the question

of negligence in a state following the doctrine of comparative negligence. The language quoted by plaintiff stems from a concern by courts in New York—which at the time the distinction between allowing the evidence as to damages but not to liability was created continued to follow the doctrine of contributory negligence [6]—that "holding a nonuser contributorily negligent would be improper since is would impose liability upon the plaintiff for *all* his injuries...." *Spier*, 323 N.E.2d at 168, 363 N.Y.S.2d 916 (emphasis added). The courts apparently created a distinction between contributory negligence and damages to avoid the harsh results of the contributory negligence doctrine. As discussed above, however, due to Vermont's comparative negligence doctrine, we need not resort to such judicial sleight-of-hand. The result will be virtually the same under either the *Caiazzo-Spier* line of cases as applied in a jurisdiction following the doctrine of contributory negligence or our own holding as applied in a comparative negligence jurisdiction: Plaintiff's conduct, although it did not contribute to the cause of the accident but only to his injury, may be considered by the jury in assessing damages.[7]

### F. *Mitigation of Damages*

Finally, Plaintiff asserts that the nonuse of a seat belt is not subject to a mitigation

---

**5.** Moreover, reading in context the language plaintiff quoted from *Lee* further supports the notion that *Lee* did not hold the cause of one's injuries, as opposed to the accident, to be irrelevant. In the next sentence, the *Lee* court stated that "[w]here there is more than one cause concurring to produce *the injury*, and one such cause is charged against the plaintiff, the burden of proof on that issue is on the defendant." *Lee*, 130 Vt. at 626, 298 A.2d at 852 (emphasis added).

**6.** *See supra* note 4. It should be noted that in *Caiazzo, supra*, 647 F.2d 241, the Second Circuit applied *Spier*'s distinction between liability and damages even after New York had elected to follow the comparative negligence doctrine. This need not affect our decision, however. First, *Caiazzo*'s holding, like that of *Spier*, did allow the evidence on the question of damages. *Id.* at 252. More importantly, however, *Curry v. Moser, supra*, note 3, which was decided by the New York courts after *Caiazzo*, specifically states that New York has now rejected any dis-

tinction between liability and damages on the issue of admissibility of seat belt evidence, and allows it as to both. Finally, even if New York had not followed the course which we are adopting, its decisions are, of course, not binding in this case.

**7.** The results would be to some extent different under the two doctrines. Under *Spier*, since a jury would not be able to consider the nonuse of one's seat belt on the issue of liability, it would never consider the evidence if it found that a defendant acted reasonably. As noted above, however, *see supra* note 4, since New York has adopted the comparative negligence doctrine it has rejected *Spier*'s distinction and allows the evidence as to both issues. Even if New York had not, however, we would admit this evidence as we believe that a jury might find that nonuse constitutes negligence and should be able to adjust an award accordingly.

of damages or an available consequences set-off because those doctrines do not apply to conduct occurring *before* the injury. To so hold, however, would mean that *any* failure to take precautionary measures— e.g., riding a motorcycle without a helmet, failing to use safety bindings when skiing—would be irrelevant on the question of damages. Such a proposition seems unsound. Instead, we share the view espoused by Dean Prosser:

A more difficult problem is presented when the plaintiff's prior conduct is found to have played no part in bringing about an impact or accident, but to have aggravated the ensuing damages. In such a case, ... [some courts] have apportioned the damages, holding that the plaintiff's recovery will be reduced to the extent that they have been aggravated by his own antecedent negligence. This would seem to be the better view, unless we are to place an entirely artificial emphasis upon the moment of impact and the pure mechanics of causation.

*W. Prosser, The Law of Torts* § 65, at 423–24 (4th ed. 1971).[8] Several other courts have adopted this view. *See, e.g., Benner v. Interstate Container Corp.,* 73 F.R.D. 502 (E.D.Pa.1977); *Curry v. Moser,* 89 A.D.2d 1, 454 N.Y.S.2d 311 (N.Y.Sup.Ct., 2d Dept.1982); *Mount v. McClellan,* 91 Ill.App.2d 1, 234 N.E.2d 329 (1968).

## II. *Strict Liability*

While it appears that Defendant Goodyear would be liable under the strict liability doctrine should the court find the tires Goodyear sold to have been defective, Plaintiff's negligence could still be considered in assessing damages under this doctrine as well as that of negligence.

Strict products liability, as embodied in Restatement (Second) of Torts § 402A (1965), has been adopted as the law of Vermont. *Zaleskie v. Joyce,* 133 Vt. 150,

154–55, 333 A.2d 110, 113 (1975). Section 402A states, in pertinent part, that:

One who sells any product in a defective condition unreasonably dangerous to the user or consumer ... is subject to liability for physical harm thereby caused to the ultimate user or consumer ... if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated ... applies although

(a) the seller has exercised all possible care....

*Id.* Thus, if Plaintiff can prove that Goodyear sold the tire in a defective condition, unreasonably dangerous to the user or consumer, he need not also prove that Goodyear was negligent in order to recover.

Comment (c) to § 402A explains that the justification for this special doctrine of liability is "that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility...." Comment (n) goes on to say that contributory negligence "is not a defense to strict liability when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence." Instead, the Comment states, Plaintiff will be barred from recovery only if he "discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product...."

Even if Goodyear cannot prove the latter, however, we decline to follow the rigid requirements of Comment (n), and hold that Goodyear should be able to introduce evidence of Plaintiff's failure to use his seat belt as a defense to strict liability. As stated above, because Vermont follows the doctrine of comparative negligence, it need

---

**8.** Prosser does recognize in this section that the damages issue is often a matter of mere speculation and that courts may properly refuse to divide the damages upon such a basis. *Id.* We are not convinced, however, that defendants in this case would have to resort to mere speculation. Moreover, we agree with Prosser that

restricting the court's view to only that behavior of plaintiff which occurs *after* the moment of the accident creates an artificial and inappropriate emphasis on that moment. We therefore decline to disallow evidence of plaintiff's possibly negligent conduct simply because it occurred prior to the moment of impact.

not be swayed by the "all or nothing" considerations present in the Comment to the Restatement or in contributory negligence jurisdictions. The purpose behind the strict liability doctrine is to hold certain sellers to a higher standard of care due to their assumption of a special responsibility. Our holding does not thwart that purpose, since Plaintiff still would not have to prove negligence on the part of Goodyear. Although we would be reluctant to completely excuse defendants simply because *some* of a plaintiff's injuries might have resulted from his own actions, it also does not seem fair to allow a negligent plaintiff, who may have contributed to as much as fifty percent of his injuries, to pay for none of them and to recover as much as a plaintiff who had taken all precautions reasonable under the circumstances.

There is nothing in the Vermont decisions to prevent us from applying comparative fault principles to this area. The Vermont courts have not yet addressed squarely the question of whether comparative fault principles may be considered under the doctrine of strict liability. In *Page v. Smith-Gates Corp.*, 143 Vt. 280, 283 n.*, 465 A.2d 1102, 1104 n.* (1983), the court, after noting that it had never taken a position on this issue, stated that it was unclear whether or not the lower court had applied comparative fault principles to the plaintiff's strict liability claim. Stating that "there [was] nothing to prevent [the] trial court's breaking new ground [in this regard]," the Vermont Supreme Court remanded the case, requesting clarification and supporting authority for the decision. *Id.* The court thus appears open to such an application.

There is a split of authority among other states on this issue. *See generally* 26 ATLA L.Rep. 153 (1983) (reviewing the case law in this area). For the reasons stated above, we choose to follow the reasoning of many other comparative fault jurisdictions, *see, e.g., Trust Corp. of Montana v. Aircraft Corp.*, 506 F.Supp. 1093 (D.Mont.1981), *aff'd*, 701 F.2d 85 (9th Cir. 1983); *Jones v. M.T.D. Products, Inc.*, 507 F.Supp. 8 (M.D.Pa.1980), *aff'd*, 649 F.2d 859 (3d Cir.1981); *Stueve v. American*

*Honda Motors Co., Inc.*, 457 F.Supp. 740 (D.Kan.1978); *Thibault v. Sears, Roebuck & Co.*, 118 N.H. 802, 395 A.2d 843 (1978); *Suter v. San Angelo Foundry & Mach. Co.*, 81 N.J. 150, 406 A.2d 140 (1979), and hold that juries may consider evidence of plaintiffs' negligence in assessing damages as to strict liability claims as well as to negligence claims.

Our ruling is, of course, limited to the admissibility of evidence regarding the nonuse of Plaintiff's seat belt. It is not dispositive on the question of negligence, nor on that of damages. Defendants must still prove not only that the nonuse of Plaintiff's seat belt constituted negligence under the circumstances presented, but also the extent to which the use of his seat belt would have prevented or reduced the injuries Plaintiff received.

For the reasons stated, Plaintiff's motion is DENIED. The parties are hereby GRANTED an additional sixty days for discovery with regard to developing evidence concerning the seat belt defense.