**ALAN MEYERS, Appellee/Plaintiff**

v.

**CRUZAN MOTORS LTD., ALFRED HAINES and RICHARD KELLY, Appellants/Defendants**

D.C. Civil No. 1985/118

District Court of the Virgin Islands

Div. of St. Croix

Appellate Division

July 24, 1986

KENNETH A. ROSSKOPF, ESQ., Decatur, GA, *for appellee/plaintiff*

DIANE WARLICK, ESQ., St. Croix, V.I., *for appellants/defendants*

CHRISTIAN, *Presiding Judge*, O'BRIEN, *District Judge*, MEYERS, *Territorial Court Judge*

## OPINION

PER CURIAM

Encouraging people to "buckle up" is the problem we face in this appeal from the territorial court. Our opinion today should achieve this result without unfairly penalizing those who choose to ignore this useful safety device.

The precise issue before us is whether the territorial court erred in granting a motion in limine excluding all seat belt evidence from trial. We affirm this decision in part and hold the territorial court correctly excluded seat belt evidence for purposes of comparative fault. We reverse, however, for purposes of damages and now hold that evidence of the failure to use seat belts is admissible to apportion damages. We therefore remand for a new trial limited to the issue of damages.

## I. FACTS

On August 31, 1982, the plaintiff, Alan Meyers ("Meyers"), was riding in the front right seat of an automobile driven by Richard Kelly ("Kelly"). The Kelly automobile collided with a vehicle owned by Cruzan Motors and operated by Alfred Hayes ("Hayes"). Upon impact Meyers was thrown forward and sustained injuries. On December 2, 1982, Meyers filed suit in territorial court. Depositions indicate the vehicle had operable seat belts which Meyers was not wearing at the time of the accident.

On February 27, 1984, the defendants moved to amend their answer to add an affirmative defense that the plaintiff's nonuse of seat belts constituted a failure to mitigate damages. Meyers filed a motion in limine on March 29, 1984, to exclude all seat belt evidence from trial. On April 25, 1984, the territorial court granted this motion. At the conclusion of trial the jury awarded Meyers $150,000.00. This appeal is from that award.

## II. DISCUSSION

Prior to addressing the merits of this appeal we make two initial comments. Since this is a case of first impression, we look for guidance to the rules of common law as expressed in the Restatement (Second) of Torts and, to the extent not so expressed,

the rules of common law as generally understood in the United States. 1 V.I.C. § 4 (1976).

Additionally, we will separate the trial court's decision into two component parts. By granting the defendants' motion, the trial court excluded this evidence for purposes of both liability and damages. As will be clear from our opinion, we will divide our discussion between use of seat belt evidence for purposes of comparative fault and use of seat belt evidence for purposes of apportioning damages.

## A. *Seat Belt Evidence for Purposes of Comparative Fault*

Almost all courts in comparative negligence jurisdictions reject the use of seat belt evidence for determining comparative fault. Peterson v. Klos, 426 F.2d 199, 202-205 (5th Cir. 1970) (by implication this diversity case predicts Mississippi would adopt the majority position as it does in D. W. Boutwell Butane Company v. Smith, 244 So. 2d 11, 12 (Miss. 1971)) remanded on other grounds 433 F.2d 911 (5th Cir. 1970); Ratterree v. Bartlett, 707 P.2d 1063, 1069 (Kan. 1985) (adopting the rationale from Tapline v. Clark, 626 P.2d 1198 (Kan. App. 1981)); Kopischke v. First Continental Corp., 610 P.2d 668, 680 (Mont. 1980) (see pages 679-680 for a long list of cases from both contributory and comparative negligence jurisdictions which support the majority rule); Amend v. Bell, 570 P.2d 138, 143-44 (Wash. 1977) (see pages 143-144 for a long list of cases from both contributory and comparative negligence jurisdictions which support the majority rule).[1]

Although the reasoning for this position varies, almost all courts are troubled by the prospect that a plaintiff could be denied recovery, or have his or her recovery reduced, by conduct which plays no part in causing the accident.

■ Additionally, the foundation upon which negligence rests is that an actor has a legally imposed standard of conduct to which he or she must adhere. This duty may arise from two sources, either a legislative enactment of the standard of conduct or from a judicially imposed standard. Many courts have declined to judicially create a duty to use seat belts and instead left this decision to their respective legislature. We agree and adopt the majority position. We therefore affirm the territorial court insofar as it excluded this evidence for purposes of comparative fault. We

---

[1] For a general discussion of this issue see 95 A.L.R.3d 239 (1979).

will defer to the Virgin Islands Legislature any decision to make seat belt use mandatory.[2]

In opposition Cruzan Motors urges us to rule that seat belt evidence may be admitted for all purposes. None of the cases cited in the appellant's brief, however, support this argument.

Four cases expressly hold this evidence may not be used for purposes of liability. Wilson v. Volkswagen of America, Inc., 445 F. Supp. 1368, 1372 (E.D. Va. 1978) (diversity case predicting Virginia law held nonuse of seat belt may be admitted for consideration by the jury in mitigation of damages only). Pritts v. Walter Lowery Trucking Company, 400 F. Supp. 867, 870 (W.D. Pa. 1975) (diversity case predicted Pennsylvania law would exclude this evidence for purposes of contributory negligence). Foley v. City of West Allis, 335 N.W.2d 824, 830 (Wis. 1983); Spier v. Barker, 323 N.E.2d 164, 167 (N.Y. 1974). One case limits evidence of the failure to use seat belts to situations where it is alleged and proven that such nonuse was a proximate cause of the accident. Insurance Company of North America v. Pasakarnis, 451 So. 2d 447, 454 (Fla. 1984). Finally, Mount v. McClellan, 234 N.E.2d 329 (Ill. 1968) has been overruled by Clarkson v. Wright, 483 N.E.2d 268, 270 (Ill. 1985).

---

[2] We note this deference is warranted because the Honorable Juan Luis has just vetoed a bill which would require the operator and all passengers of a motor vehicle to wear safety belts. Bill No. 16-0575.

It is apparent from this effort that Virgin Islands legislators are considering this problem.

We note that the majority rule for use of seat belt evidence, in determining comparative fault, may change in the near future. This is due to the large number of jurisdictions which have passed legislation requiring operators and passengers to use seat belts when driving.

By August 1, 1986, 25 jurisdictions will have statutes requiring the operator and front seat passengers to wear seat belts. District of Columbia, California, Connecticut, Florida, Hawaii, Idaho, Illinois, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, New Jersey, New Mexico, New York, North Carolina, Ohio, Tennessee, Texas, Utah and Washington. Two other jurisdictions have laws effective in 1987. Indiana and Oklahoma. These statutes generally provide that evidence of a violation may not be used for purposes of comparative fault. Most of these statutes also prohibit evidence of a violation from being used to reduce damages. In three jurisdictions this evidence can be used to reduce damages limited to a maximum reduction of 5%. Michigan and Nebraska, 5%. Louisiana, 2%, Missouri 1%.

The proposed Virgin Islands Bill does not prevent the introduction at a civil trial of a violation of the proposed Act.

Only one case, cited at oral argument, has allowed seat belt evidence for purposes of determining comparative negligence. Smith v. Goodyear Tire & Rubber Co., 600 F. Supp. 1561, 1563 (D. Vt. 1985). Even assuming, arguendo, that the stricture of 1 V.I.C. § 4 (1967) did not force us to adopt the majority position, for the following reasons we find fault with the rationale in Smith.

First, Smith cites two cases as authority, both of which are distinguishable from its facts. In Benner v. Interstate Container Corp., 73 F.R.D. 502 (E.D. Pa. 1977), an instruction concerning the failure to use seat belts was allowed for purposes of reducing damages and not for purposes of comparative fault. The factual situation in Curry v. Moser, 454 N.Y.S.2d 311 (N.Y. App. Div. 1982) is distinct because there the failure to use a seat belt was arguably the proximate cause of the accident.[3]

Second, the Smith court states "that admitting such evidence on the issue of damages is, in effect, the same as allowing it to be considered on the question of negligence in a state following the doctrine of comparative negligence." We disagree.

For a variety of reasons, many courts in comparative negligence jurisdictions, which admit the use of seat belt evidence, clearly limit its admissibility to apportioning damages and not for purposes of comparative fault. As seen in Foley, supra, allowing this evidence to be used for both the liability and damage decisions could produce anomalous results.

The Wisconsin Supreme Court held that the trial court had erred in dismissing the plaintiffs' action because it had incorrectly calculated each plaintiff's contributory negligence. The trial court, in making its calculation, treated each plaintiff's failure to wear seat belts as it would any other form of negligence. In doing so the court combined the plaintiff-driver's negligence for both his driving and for failing to use a seat belt when it calculated comparative fault. Though the negligence attributed to his driving was less than the individual negligence of one of the respective defendants, the trial court dismissed the entire action because the driver's combined negligence, from both driving and failing to wear seat

---

[3] In Curry, the plaintiff was injured when she fell from a vehicle and landed directly in the path of an adjacent vehicle. In admitting evidence of the nonuse of seat belts, the court noted that it was carving an exception to the general rule in New York announced in Spier v. Barker, 323 N.E.2d 164 (N.Y. 1974).

belts, was greater than the negligence of any given defendant.[4] In reversing the trial court, the Wisconsin Supreme Court held that the failure to wear an available seat belt when it is not a cause of the collision but only enhanced a party's injuries, should not be used to determine that party's contributory negligence but should be used only to reduce the amount of damages recoverable. The Wisconsin court believed a plaintiff should not be excluded from all recovery for conduct which played no part in causing the accident, however, it was proper to penalize the plaintiff by reducing his damage award.

Other comparative jurisdictions support this position. See generally, Insurance Company of North America v. Pasakarnis, 451 So. 2d 447, 453–54 (Fla. 1984); Spier v. Barker, 323 N.E.2d at 167.

## B. *Use of Seat Belt Evidence for Apportioning Damages*

The Restatement (Second) of Torts § 433A(1)(b) (1965) states that "[d]amages for harm are to be apportioned among two or more causes where ; . . there is a reasonable basis for determining the contribution of each cause to a single harm." This rule applies when one or more of the contributing causes of the harm is an innocent one such as the situation where the negligence of the defendant combines with the innocent conduct of the plaintiff to bring about the harm. Restatement (Second) of Torts § 433A comment (a). Cf. Restatement (Second) of Torts § 465 comment (c).[5] Use of § 433A in automobile accident cases is not novel.

---

[4] The Wisconsin comparative negligence statute, in cases with more than one defendant, appears to individually compare a plaintiff's negligence against the separate negligence of each defendant. The Virgin Islands statute, on the other hand, compares a plaintiff's negligence against the combined negligence of all the defendants. See 5 V.I.C. § 1451(a) (Supp. 1985), which states in part "[i]f such claimant is found by the trier of fact to be . . . more at fault than the combined fault of the defendants, the claimant may not recover."

[5] Comment (c) states in part:

In particular, the rules stated in § 433A as to the apportionment of harm to different causes are applicable in cases of contributory negligence . . . .

Such apportionment may also be made where antecedent negligence of the plaintiff is found not to contribute in any way to the original accident or injury, but to be a substantial contributing factor in increasing the harm which ensues. There must of course be satisfactory evidence to support such a finding, and the court may properly refuse to permit the apportionment on the basis of mere speculation.

In at least two analogous factual scenarios, courts have used these apportionment principles strictly for purposes of dividing damages. For example in Foley, supra, a case directly on point, the Wisconsin court cited § 433A in support of its decision to apportion damages between the plaintiff, who failed to use his seat belt, and the defendant tortfeasor.

Other courts have used these apportionment principles in automotive product liability suits. These cases generally apportion damages between the tortfeasor and the manufacturer.[6]

Both situations involve "second collision" analysis. Most automobile accidents which result in personal injuries involve two separate collisions. The first collision occurs when the plaintiff's car collides with another vehicle or some solid object. The second collision occurs when unrestrained passengers collide with the interior of their vehicle, or, when thrown clear of their vehicle, collide with some portion of the outside world. As stated before, most courts exclude seat belt evidence for purposes of liability arising from the first collision because it would be unfair to penalize a plaintiff for conduct which in no way contributed to the accident.

Many courts, seeking to penalize plaintiffs for the enhanced injuries from the second collision which could have been avoided by using seat belts, have had difficulty finding a theoretical mechanism for incorporating this evidence into normal tort doctrine. Under comparative fault theory, a court must reduce a plaintiff's recovery by the proportionate amount of the plaintiff's contributory negligence. As was seen in Foley, this could lead to improper results, particularly where the plaintiff's active negligence contributing to the first collision, combined with his passive negligence contributing to his enhanced damages in the second collision, is greater than a defendant's fault.

In general, whenever a plaintiff's active negligence, contributing to the first collision, is less than the defendant tortfeasor's, that plaintiff should be entitled to recover damages. That a plaintiff's total share of fault, from this active and passive negligence, is greater than the defendant's share of fault should not change this

---

[6] For an example of how recent cases have addressed the subject see Shipp v. General Motors Corp., 750 F.2d 418, 424 (5th Cir. 1985) (citing general rule from § 433A); McLeod v. American Motors Corp., 723 F.2d 830, 833 (11th Cir. 1984); Mitchell v. Volkswagenwerk A.G., 669 F.2d 1199, 1206 (8th Cir. 1982); Fox v. Ford Motor Co., 575 F.2d 774, 787 (10th Cir. 1978) (court implied in dicta that § 433A could be used to apportion damages arising from a defectively designed seat belt and those damages arising from the collision).

result. By limiting the apportionment principles to reducing damages incurred in the second collision we can avoid this problem.

Though this second collision apportionment theory may be novel, it can be integrated into traditional negligence analysis. Duty, breach of that duty, proximate cause, and damages are the elements of a plaintiff's prima facie case in an average tort action under a negligence theory. Application of these elements to a typical auto accident, involving two collisions, is not difficult.

A plaintiff's and a defendant's active breach of duty during driving contribute to the first collision. This collision is the proximate cause of the personal injuries arising from the second collision. That these damages, attributable to the second collision, are enhanced by failure to wear seat belts is irrelevant for purposes of comparing the breach of duties which cause the first collision. Failure to wear a seat belt is particularly relevant, however, with respect to the severity of the injuries sustained. To avoid the problems described above we adopt the apportionment principles of § 433A for use in automobile cases with the express limitation that any fault, on the part of the plaintiff in failing to wear operable seat belts, shall not be used in the comparative fault calculation. 5 V.I.C. § 1451 (Supp. 1985).

■ We limit the comparative fault calculation to a comparison between the active negligence of the plaintiff and defendant arising from the first collision. Once this calculation is made, a plaintiff's recovery can then be reduced by that percentage of passive negligence in the second collision arising from his or her failure to wear seat belts.[7]

Even assuming, arguendo, that we were not bound to follow the apportionment principles of 433A, we note that a growing trend in a number of jurisdictions is to allow this evidence for use in reducing damages. Pasakarnis, 451 So. 2d at 454; Foley, 335 N.W.2d at 830; Spier, 323 N.E.2d at 167. Cf. Henderson v. United States, 429 F.2d 588, 591 (10th Cir. 1970); Wilson, 445 F. Supp. at 1372; Benner v. Interstate Container Corp., 73 F.R.D. 502, 504

---

[7] Trial courts will now have to propound special interrogatories to the jury which first inquire as to the percentage of fault corresponding to each defendant and plaintiff. Next the jury must determine the total damages for the accident. Finally, after the above calculations are complete, a jury should determine whether any of the plaintiff's injuries were enhanced by failing to wear seat belts and to determine what percentage of injuries were attributable to the first collision and what percentage were attributable to the failure to wear safety belts.

(E.D. Pa. 1977). Admittedly, this is not the majority position, however it is the modern trend.[8]

## III. CONCLUSION

In summary we hold that the failure to wear seat belts is not admissible at trial for purposes of comparative fault. This evidence can be used, however, for apportioning damages in a manner not inconsistent with this opinion.

## JUDGMENT

THIS MATTER came before the Court on appeal from the Territorial Court. Having filed an opinion of even date herewith, and the premises considered, now therefore it is

ORDERED:

THAT the decision of the Territorial Court be, and the same, is hereby REVERSED in part and further

THAT this matter be REMANDED to the Territorial Court for a new trial limited to the issue of damages consistent with the opinion of the Court herein.

---

[8] In the absence of a clear trend in either direction, we are free to apply the "better rule." Edwards v. Born, Inc., No. 85-3312, slip op. at 7 (3d Cir. June 11, 1986); LaPlace v. Sun Alliance Office Ltd., 298 F. Supp. 764, 766 (D.V.I. 1969).

Though this is clearly the minority position to date, the large amount of legislative activity could alter this status in the near future. See supra, note 2.