**William BROWN and Ramona Brown
v. ROADWAY EXPRESS, INC. and
Michael D. Heyman**

[740 A.2d 352]

No. 98-280

Appeal from Chittenden Superior Court.

August 24, 1999. This is a negligence action arising from an accident in which a motorcycle driven by William Brown collided with a tractor-trailer truck owned by Roadway Express and driven by Michael D. Heyman. Defendants Roadway Express, Inc. and Michael D. Heyman appeal from a judgment entered in the Chittenden Superior Court on a jury verdict awarding plaintiffs William and Ramona Brown $1,078,334.15 in compensatory damages. The issues on appeal involve the court's determination that Heyman was negligent as a matter of law, the court's instructions to the jury concerning punitive damages and certain comments made by plaintiffs' counsel during closing argument. We affirm the judgment.

The relevant facts are largely undisputed. On July 13, 1995, a tractor-trailer truck driven by Heyman and owned by Roadway Express was proceeding northbound on Route 12 en route from Northfield to Barre. Heyman was an employee of Roadway Express, acting within the scope of his employment. The accident occurred in Berlin, just north of the point where Route 12 crosses beneath a railway overpass. A sign in the northbound lane of Route 12 warns motorists that the overpass is 13 feet, 2 inches above the ground. The truck required a clearance of 13 feet, 6 inches. Heyman, aware that his truck could clear the overpass by traveling in the southbound lane but not the northbound one, drove the truck across the double-yellow line of the highway and into the southbound lane, passed under the overpass and struck head-on the motorcycle driven by William Brown. The motorcycle driver sustained injuries, and his brother, a passenger, was killed in the accident.

In their complaint, plaintiffs sought both compensatory and punitive damages from defendants. At the conclusion of the three-day trial that ultimately ensued, the court instructed the jury that both Heyman and Roadway Express were negligent — the former because he failed to use due care in the operation of his vehicle and the latter because Heyman was an employee acting in the course of his employment. Explicitly left for the jury to decide was whether defendants' negligence proximately caused any damages to plaintiffs, whether contributory negligence was involved, and whether plaintiffs were entitled to recover any punitive damages. The jury found no contributory negligence but awarded plaintiffs compensatory damages only. Of the $1,078,334.15 awarded by the jury on its special verdict form, $5,000 was attributed to damage to the motorcycle, $15,274.15 to past medical expenses, $8,060 to lost earnings, $50,000 to Ramona Brown's loss of consortium, and $1,000,000 to all other past and future damages.

Defendants first contend that the court erred when it instructed the jury that defendants were negligent as a matter of law, leaving jurors to decide only the questions of causation, damages and punitive damages. We discern no error.

Negligence is failure to exercise the care that the circumstances reasonably require or justly demand. See *Weaver v. Georg Karl Geka Brush*, 166 Vt. 98, 102, 689 A.2d 439, 442 (1996). Proof of a defendant's violation of a safety statute creates at least a rebuttable presumption of negligence, which "shifts the burden of

production to the party against whom the presumption operates." *Bacon v. Lascelles*, 165 Vt. 214, 222, 678 A.2d 902, 907 (1996); see also *Marzec-Gerrior v. D.C.P. Indus., Inc.*, 164 Vt. 569, 574-76, 674 A.2d 1248, 1251-52 (1995) (Dooley, J., concurring) (discussing flaws in rebuttable presumption rule and proposing negligence per se as more logical approach to safety statute violations). The presumption disappears when the party with the burden of production meets it. *Bacon*, 165 Vt. at 222-23, 678 A.2d at 907. If that party fails to offer evidence to show that the violation of the statute was justified or that the party exercised due care despite the violation of the statute, the court must direct the jury to find the existence of the presumed fact, that is, the negligence of the defendant. See V.R.E. 301(c)(1); *Duncan v. Wescott*, 142 Vt. 471, 474, 457 A.2d 277, 278 (1983) (where defendant fails to rebut presumption of negligence, plaintiff proved negligence as matter of law).

Heyman violated 23 V.S.A. § 1031(a), which provides that "[u]pon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway." Section 1031(a)(2) contains exceptions, one of which applies "[w]hen an obstruction exists making it necessary to drive to the left of the center of the highway." *Id.* at (a)(2) (requiring such a driver to "yield the right of way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard"). Defendants agree that the truck was not upon the right half of the roadway at the time of the accident, but contend that the exception applies, because an obstruction existed making it necessary to drive to the left of the center of the highway.

In construing a statute, we look "to the reason and spirit of the law and its consequences and effects to reach a fair and rational result." *In re Margaret Susan P.*, 169 Vt. 252, 262, 733 A.2d 38, 46 (1999). We enforce the plain, ordinary meaning of language used by the Legislature. See *Brennan v. Town of Colchester*, 169 Vt. 175, 177, 730 A.2d 601, 603 (1999). "Obstruction" in this context refers to a temporary condition that makes part of a roadway impassable to all vehicles, as distinct from a fixed condition that makes certain vehicles (such as eighteen-wheel tractor-trailers) unable to use the proper lane. A bridge does not become an "obstruction" simply because the operator is driving a truck too large to fit under it. Therefore, the exception does not apply in this case, and defendant's violation of the statute raises a rebuttable presumption of negligence.

The evidence defendants proffered to rebut the presumption related to the reasonableness of Heyman's actions once he decided to proceed under the railroad overpass. Even if a reasonable jury could conclude that Heyman acted with the highest degree of care in implementing his decision, what remains unrebutted is the negligence of his decision to travel the route and to cross into plaintiff's lane of travel to proceed under the overpass. Because the defendants failed to rebut the presumption of negligence arising from the violation of the statute, the trial court properly determined that Heyman was negligent as a matter of law. There was no error in reaching that decision independently, without a motion from plaintiffs. The court was required to apply the safety statute and V.R.E. 301(c), and charge the jury on the applicable law.

Roadway Express claims that the trial court erred by instructing the jury that it could award punitive damages. The jury awarded only compensatory damages, but Roadway Express maintains that the error was not harmless because the ruling allowed the jury to hear evidence concerning its substantial net worth — evidence that was not relevant to the question of compensatory damages — and also opened the door to a closing

argument on plaintiff's behalf that contrasted him, a native Vermonter of modest means, with Roadway Express, a large, out-of-state corporation.

Two well-established principles are determinative. The first is that "a judgment will not be reversed for an error that, by the verdict, is rendered immaterial." *Parizo v. Wilson*, 101 Vt. 514, 518, 144 A. 856, 858 (1929) (so holding when court "permitted counsel for plaintiff to argue the subject of exemplary damages to jury," which awarded only compensatory damages). The second is that "'[t]here can be no assumption under our system of jurisprudence that the jury will disregard the instructions of the trial court.'" *State v. Shaw*, 149 Vt. 275, 279, 542 A.2d 1106, 1108 (1987) (quoting *Lewis v. Gagne*, 123 Vt. 217, 219, 185 A.2d 468, 470 (1962)). Particularly in an instance such as this one, where the jury returned a special verdict form that suggests a careful assessment of the various damages claims, we have no basis for concluding that these jurors ignored the court's instructions on compensatory damages and considered evidence or argument offered to support plaintiffs' claim for punitive damages. In so holding, we express no view as to the propriety of the challenged instruction. The error, if any, was harmless.

Finally, Roadway Express contends that certain statements made by plaintiffs' counsel in opening statement and closing argument merit reversal regardless of whether the jury was properly instructed. What Roadway Express finds objectionable are the references to plaintiff and his family as blue-collar Vermonters of modest means, as compared to Roadway Express as an out-of-state company with a net worth of approximately $240 million. Roadway Express points out, in particular, that in urging the jury to award a "civil fine" of two million dollars, plaintiffs' counsel compared imposing a ten thousand dollar penalty against the company to paying a twenty dollar traffic ticket.

Roadway Express relies on *Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534 (2d Cir. 1992). *Pappas* was a premises liability case involving a ski condominium; the Second Circuit Court of Appeals vacated the judgment entered in favor of the Vermont defendants because their counsel had appealed in closing argument to perceived in-state hostility toward out-of-state plaintiffs who had come to Vermont to ski. See *id.* at 539 (noting that "appeals to the regional bias of a jury are completely out of place in a federal courtroom"). But see *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 51 (2d Cir. 1998) (noting that claims of improper appeals to juror bias by counsel must be evaluated in "context of the entire trial" and standard jury instruction that arguments of counsel are not evidence).

We agree that appeals to regional bias are inconsistent with notions of impartial justice, but we have also been hesitant in the past to overturn a jury verdict based on the arguments of counsel. See, e.g., *Debus v. Grand Union Stores*, 159 Vt. 537, 544, 621 A.2d 1288, 1293 (1993) (refusing to vacate judgment where defendant made no showing of prejudicial effect to opposing counsel's suggestion that defendant merited different treatment because it was corporation). Moreover, of particular importance in *Pappas* was the absence of a curative instruction to the jury. See *Pappas*, 963 F.2d at 540 (condemning trial court's "express approval" of improper argument). Here, in contrast, the trial court offered to give a curative instruction that the case was "not a matter of us Vermonters against some out-of-state corporation," but counsel for Roadway Express rejected it as likely to "do more harm than good." Putting aside the question of whether Roadway Express waived the issue by taking such a position, we conclude that the trial court did not abuse its discretion in refusing to give a more strongly-worded admonition to the jury. See *Debus*, 159 Vt. at 545, 621

A.2d at 1293 (noting that trial court has discretion in deciding whether curative instructions are necessary).

*Affirmed.*